STATE of Wisconsin, Plaintiff-Respondent,

v.

Theodore L. BRIGGS, Defendant-Appellant.†

Court of Appeals

*No. 97–0439–CR. Submitted on briefs August 26, 1997.—Decided October 21, 1997.*

(Also reported in 571 N.W.2d 881.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey T. Jackomino* of *O'Melia, Schiek & McEldowney, S.C.* of Rhinelander.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Barbara L. Oswald,* assistant attorney general.

Before Cane, P.J., Myse and Hoover, JJ.

CANE, P.J.   Theodore Briggs appeals a felony conviction for submitting a false proof of loss in support of an insurance claim, contrary to § 943.395(1)(b) and (2), STATS. Briggs challenges the judgment on three grounds: the trial court erred as a matter of law by not requiring the State to prove that the value of the fraudulent portion of the claim exceeded $1,000; his right to a unanimous verdict was violated because the trial

court refused to require the State to plead and prove with specificity the false portions of the proof of loss and the jury was not required to be unanimous as to which items were false; and the trial court erroneously exercised its discretion by refusing to allow Briggs to read a transcript[1] to the jury based on the rule of completeness. We are not persuaded by Briggs's arguments and therefore affirm.

The charges arose from a fire at Briggs's home on April 15, 1993. The State charged Briggs with one count of arson and one count of submitting a fraudulent insurance claim. A jury acquitted Briggs of the arson charge, but found him guilty of submitting a fraudulent insurance claim. Briggs filed a postconviction motion, which was denied. This appeal followed.

Briggs consistently asserted at trial, as he does on appeal, that § 943.395(1) and (2), STATS., require the State to specify which items on the proof of loss are allegedly false and to prove that the amount of the fraudulent portion of the claim exceeded $1,000. The trial court rejected Briggs's interpretation, holding that the State need only prove the following four elements: (1) Briggs prepared or subscribed to a proof of loss to be used in support of a claim for payment; (2) the proof of loss was false or fraudulent; (3) Briggs knew the proof of loss was false or fraudulent; and (4) Briggs prepared or signed the proof of loss with the intent to defraud the insurance company. The question of the claim's value was to be answered by the jury only upon

---

[1] Prior to the initiation of the criminal case, Briggs filed a civil action against his insurer, West Bend Mutual Insurance Company, based on its denial of his insurance claim. The written transcript testimony the State read to the jury was taken in the course of that civil suit.

a finding that the State had proved all four elements of the offense beyond a reasonable doubt.

The trial court's interpretation of § 943.395(1) and (2), STATS., gives rise to Briggs's first two arguments on appeal. First, Briggs contends that the trial court's interpretation is erroneous as a matter of law and the jury instructions were also flawed because they were incorrectly based on that interpretation. Briggs contends that the statute requires proof that the false or fraudulent portion of the claim exceeded $1,000, not merely that the total amount of all items making up the whole claim exceeded $1,000.

Briggs's second argument is that his right to a unanimous verdict was violated because, based on his proffered interpretation of § 943.395, STATS., the State had the burden of specifying in its information and complaint the items on the proof of loss alleged to be false or fraudulent and proving them at trial. Briggs argued that the danger existed that the jury's verdict would not be unanimous because the jurors would neither be instructed nor required to agree on the specific item or items that Briggs falsely or fraudulently included on the proof of loss. The trial court consistently rejected Briggs's interpretation of the statute, and we do the same.

Interpretation of a statute and application of that statute to a set of undisputed facts is a question of law this court reviews de novo. *State v. Sostre*, 198 Wis. 2d 409, 414, 542 N.W.2d 774, 776 (1996). "If the plain language of a statute is unambiguous a court must give it effect and can look no further." *State v. Williams*, 198 Wis. 2d 516, 525, 544 N.W.2d 406, 410 (1996). If ambiguity is found, then the court examines the scope, history, context, subject matter and object of the stat-

ute in order to ascertain legislative intent. *Id.* "Ambiguity occurs when reasonably well-informed persons can understand a statute in more than one way." *Id.* at 526, 544 N.W.2d at 410.

Section 943.395, STATS., contains the following language:

> (1)   Whoever, knowing it to be false or fraudulent, does any of the following may be penalized as provided in sub. (2):
>
>    . . . .
>
> (b)   Prepares, makes or subscribes to a false or fraudulent . . . proof of loss or other document or writing, with knowledge that the same may be presented or used in support of a claim for payment under a policy of insurance.
>
>    . . . .
>
> (2)   Whoever violates this section:
>
> (a)   Is guilty of a Class A misdemeanor if the value of the claim or benefit does not exceed $1,000.
>
> (b)   Is guilty of a Class E felony if the value of the claim or benefit exceeds $1,000.

The question before us is whether the language "value of the claim" in subsec. (2) is ambiguous; that is, whether reasonably well-informed people can understand it in more than one way.

Briggs argues that ambiguity exists because the statute can be understood to mean that in order to be guilty of a felony under § 943.395(2)(b), STATS., the value of the fraudulent portion of the claim must be greater than $1,000. Briggs argues that the legislature's intent is obviously to punish criminal activity—in this case, preparing or signing a false proof of loss—and that it logically follows that the penalty

provisions in § 943.395(2)(a) and (b) directly relate to the criminal activity and, therefore, refer to the value of the false portion of the claim. He protests the trial court's interpretation, stating that it leads to an absurd result. For instance, he could have been convicted of a felony even if he only included ten dollars' worth of false claims since he had submitted an undisputed legitimate claim of $73,000 for his real estate.

Briggs's argument, however, is not based on the plain language of the statute. Briggs overlooks the plain language of § 943.395(1)(b), STATS., which says that the act prohibited by the statute is preparing or signing a *false or fraudulent proof of loss* or other document with knowledge that it will be presented or used in support of *a claim for payment* from the insurance company. It is apparent from the statutory language that the term "claim" refers to the aggregate submission for payment, not the compilation's constituent items. For example, it prohibits preparing "*a* . . . proof of loss . . . in support of *a* claim." Section 943.395(1)(b), STATS. (emphasis added). A proof of loss may describe any number of items, but it is prepared in support of a single claim. It is sufficient that any portion of the claim, as evidenced by the item or items on the proof of loss, is false. There is no requirement that the false portion meet any specific dollar amount.

When interpreting a statute, it is appropriate for the court to turn to dictionary definitions for the common and ordinary understanding of words. *Northwest Wholesale Lumber v. Anderson*, 191 Wis. 2d 278, 284, 528 N.W.2d 502, 505 (Ct. App. 1995). Claim is defined as "a demand for compensation, benefits, or payment (as one made . . . under an insurance policy upon the happening of the contingency against which it is

287

issued)." WEBSTER'S THIRD NEW INT'L DICTIONARY 414 (unabr. 1976). Value means "the monetary worth of something." *Id.* at 2530. The statute provides in subsec. (2)(b) that whoever violates § 943.395, STATS., is guilty of a Class E felony "if the value of the claim or benefit exceeds $1,000." The word "claim" in that section refers back to the language in subsec. (1)(b), which refers to "a claim for payment under a policy of insurance." The additional words "total claim" or "false or fraudulent portion of the claim" do not appear in either section of the statute.

"We assume that the legislature deliberately chooses the language it uses in a statute." *Northwest Wholesale,* 191 Wis. 2d at 284, 528 N.W.2d at 505. To accept Briggs's interpretation of § 943.395, STATS., is to expand the meaning of the statute to the point that we engage in rewriting the statute, not merely interpreting it.

Whether this statute is wise is not a matter for this court to decide. That decision was made by the legislature and, if it is to be reconsidered, the legislature is the body to undertake such an endeavor. *See Arreola v. State,* 199 Wis. 2d 426, 439, 544 N.W.2d 611, 617 (Ct. App. 1996). The role of the legislature is to write the law; it is the role of the courts to read those laws and determine the legislature's intent. *See id.* " 'If the statute is clear on its face, our inquiry as to the legislature's intent ends and we must simply apply the statute to the facts of the case.' " *Id.* at 439–40, 544 N.W.2d at 617 (quoting *In re Peter B.,* 184 Wis. 2d 57, 70–71, 516 N.W.2d 746, 752 (Ct. App. 1994)).

We conclude that the statute is clear on its face and that its plain language reflects the legislature's intent to punish the submission of a fraudulent insur-

ance claim as a felony when the claim presented exceeds $1,000. Here, Briggs submitted one claim for $128,100. Evidence was presented that a number of items listed on the proof of loss submitted in support of the claim were false in some respect. Because Briggs's claim exceeded $1,000, he was properly charged with a felony, and the jury was properly instructed as to the required elements. Therefore, we affirm the trial court's interpretation and application of § 943.395, STATS.

Briggs also argues that his conviction should be overturned because his right to a unanimous verdict, as guaranteed by the Fourteenth Amendment to the United States Constitution and art. I, §§ 5 and 7, of the Wisconsin Constitution, was violated. He contends the general unanimity instruction was insufficient to assure that all twelve jurors would agree which item or items on the proof of loss were false. Briggs's position assumes that juror unanimity on the specific items was actually required in his case. We conclude it was not required.

■

The first step in addressing a unanimity question is whether the jury has been presented with evidence of multiple crimes, or evidence of alternate means of committing the *actus reus* element of a single crime. *State v. Lomagro*, 113 Wis. 2d 582, 592, 335 N.W.2d 583, 589 (1983). If evidence of more than one crime is presented to the jury, then the jury must be unanimous as to each crime. However, if there is evidence of only one crime, then jury unanimity is required only if the acts are conceptually distinct. Unanimity is not required if the acts are conceptually similar. *Id.*

Here, the State presented testimony from Briggs's girlfriend, Carla Nehls, who testified that some of the

items on the proof of loss were never present in Briggs's home and that the values of other items were inflated. She also testified that she helped Briggs prepare the proof of loss, which he signed. He told her what items to list and what monetary value to write down and she complied. The list was prepared during one sitting. She also testified that when she questioned Briggs about some of the items, he told her "to just write it down, they didn't need to know that."

This testimony demonstrates that the State presented evidence of one continuous, unlawful event, committed by the same person during a short period of time relating to one continuous transaction. *See Lomagro*, 113 Wis. 2d at 587, 335 N.W.2d at 587. It was within the State's discretion to charge this as one count. *Id.* Nehls testified that, to her knowledge, Briggs never owned several items listed on the proof of loss, including a camera, dining room set, compact disc player boom box, camcorder, twenty-seven-inch television set, and sets of dishes. Inclusion of any one of these items would render the proof of loss false. Therefore, this testimony provided evidence of alternative means of committing the single crime of preparing or signing a false proof of loss in support of an insurance claim.

Evidence of a single crime having been presented, we next determine whether each act of listing a false or fraudulent item on the proof of loss was conceptually similar or distinct from each other listing. If conceptually similar, then unanimity on which of the specific items was false is not required.

In *Lomagro*, the court held that jury unanimity was not required on the specific act constituting first-degree sexual assault where the evidence presented showed that the defendant committed penis-to-vagina intercourse as well as an act of fellatio. The court found

these acts to be conceptually similar. Furthermore, in *State v. Giwosky*, 109 Wis. 2d 446, 326 N.W.2d 232 (1982), the defendant was charged with battery, and the jury was able to consider evidence that the victim was injured either by the defendant's act of throwing a log at him or by punching and kicking him. The court found those actions to be conceptually similar as well. *Id.* at 457, 326 N.W.2d at 238.

■

Briggs argues that writing a true item with an accurate value on the proof of loss is conceptually distinct from writing an item that did not exist, or an existing item with an inflated value. The argument is flawed in that it suggests legitimate and illegitimate acts correspond. The material focus, however, is on the conceptual similarity of separate instances of falsely creating or valuing components of a claim. The act of listing one item of fraudulently valued property is conceptually identical to including a second inflated or created item on the same proof of loss form. Evidence of each false entry on the proof of loss provided the jury with alternate means upon which to find Briggs guilty of the offense. The list was compiled at one sitting within a distinct period of time, and each act of entering a false item, whether because of nonexistence or inflated value, was similar to each other act of entering a false item. Therefore, it was unnecessary to instruct the jury that in order to find Briggs guilty of submitting a fraudulent insurance claim, all twelve jurors had to agree on which item or items on the proof of loss were false or fraudulent. The instruction given was sufficient to assure Briggs's right to a unanimous verdict.

Finally, Briggs argues that the trial court erred when it denied him the opportunity to read portions of the sworn statement given in his civil suit. He contends

that the rule of completeness compels the court to allow him to read the additional portions of the deposition.

We conclude that the trial court properly exercised its discretion regarding the introduction of this evidence. The admissibility of evidence is a matter within the trial court's discretion, and we will not disturb the decision absent a misuse of that discretion. *State v. Sharp*, 180 Wis. 2d 640, 649, 511 N.W.2d 316, 320 (Ct. App. 1993). The trial court's decision will be upheld if the record reflects that discretion was, in fact, exercised and the basis for the exercise of discretion is set forth on the record. *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983).

The common law rule of completeness is codified at § 901.07, STATS., and states:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

The rule "require[s] that a statement be admitted in its entirety when this is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact, or to ensure a 'fair and impartial understanding' of the admitted portion." *Sharp*, 180 Wis. 2d at 653–54, 511 N.W.2d at 322 (quoting *United States v. Marin*, 669 F.2d 73, 84 (2nd Cir. 1982)).

In this case, the State read approximately ten pages of questions and answers to the jury from a document entitled "Sworn Statement of Theodore Lee Briggs." The document was marked, offered and received by stipulation as an exhibit at that time.

Counsel for Briggs reserved the right to "read whatever portion I feel appropriate in my case in chief." Defense counsel did, in fact, attempt to read substantially the rest of the 158-page transcript during its case-in-chief. The State objected on hearsay grounds. Defense counsel argued that the statement should be admitted, citing the rule of completeness and *Sharp*, as well as the previous agreement on the record that he would be allowed to read other portions of the testimony. The trial court held that, regardless of counsel's stipulation, it would have allowed the State to introduce the portions it read because they were admissible as an exception to the hearsay rule under § 908.01(4)(b), STATS. Additionally, the trial court found the whole transcript, as offered by Briggs, to be hearsay without any available exception, and refused to allow Briggs to publish the transcript to the jury. Finally, the trial court found it unnecessary under the circumstances to apply the rule of completeness to overcome the inadmissibility on hearsay grounds.

The record reflects the trial court engaged in a well-reasoned decisionmaking process before excluding the transcript testimony. The court considered the circumstances of the case, the material to be presented, the rule of completeness, and the hearsay rules before excluding the evidence. The court refused to use the rule of completeness, a rule of fairness, to allow Briggs to introduce his testimony without taking the stand and facing cross-examination by the State. This was a reasonable exercise of discretion and we therefore affirm.

*By the Court.*—Judgment affirmed.