**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**June 10, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2128-CR**

Cir. Ct. No. **2015CF10**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT IV**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

TRAVANTI D. SCHMIDT,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Grant County: CRAIG R. DAY, Judge. *Affirmed*.

Before Kloppenburg, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Travanti Schmidt appeals a judgment of conviction for one count of assault by a prisoner.  He also appeals the circuit court order denying his motion for postconviction relief.

¶2     Schmidt raises three issues on appeal.  First, he argues that the evidence presented at trial was insufficient to support his conviction.  Second, he contends that the charging documents and jury instructions were duplicitous because they failed to specify which of two correctional officers was the target of the charged assault.  Third, Schmidt argues that his trial counsel was ineffective by not objecting to the jury instructions on the basis that they violated Schmidt's right to a unanimous verdict.

¶3     For the reasons set forth below, we reject all of Schmidt's arguments and affirm.

## BACKGROUND

¶4     The State filed a criminal complaint charging Schmidt with one count of assault by a prisoner with a bodily substance, in violation of WIS. STAT. § 946.43(2m)(a) (2019-20).[1]  The complaint alleged that Schmidt, a prisoner confined to the Wisconsin Secure Program Facility in Boscobel, Wisconsin, expelled saliva at or toward "Victim 1" while Victim 1 was escorting Schmidt from a holding cell to another cell.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.  WISCONSIN STAT. § 46.43(2m)(a) has not changed since Schmidt's 2014 charged conduct.

¶5      The case proceeded to trial.  Correctional officers C.F. and S.P. testified to the following facts.  On December 22, 2014, Schmidt was being moved through a hallway by correctional officers, including C.F., while S.P. stood off to the side.  As he was being escorted, Schmidt shouted derogatory remarks and profanity at S.P. and another officer.  Schmidt turned his head toward S.P., and C.F. instructed Schmidt to "face forward."  At approximately the time that C.F. gave Schmidt the instruction to face forward, C.F. and S.P. heard Schmidt clear his throat to bring up spit.  As Schmidt prepared to spit, C.F. brought up his arm to block the spit.  Schmidt spat in the direction of S.P., and the saliva landed on C.F's right arm, shoulder and chest.

¶6      Schmidt also testified at trial, stating that he never spat or yelled at any of the officers.  Instead, he testified that he "had some painful expression coming out" because C.F. stepped on his injured foot.  When asked if the substance seen in one of the videos shown to the jury was spit, Schmidt responded that it was not spit but was instead "light from the top of the ceiling" and that the placement of the camera near a bright light made the light appear as spit.  The jury found Schmidt guilty as charged.

¶7      Schmidt filed his first appeal, arguing that the evidence was insufficient to support his conviction and that his charge was duplicitous.  In response, on March 8, 2018, this court issued an order (referred to in this opinion as the 2018 order) in which we concluded that Schmidt's arguments may have implied a unanimity problem; therefore, we provided Schmidt with an opportunity to decide whether to pursue a jury unanimity claim.  Schmidt decided to pursue the jury unanimity issue and, over the State's objection, we dismissed the appeal without prejudice, concluding that Schmidt's arguments were best addressed through the postconviction process.

3

¶8 Schmidt filed a motion for postconviction relief, arguing that he had received ineffective assistance of trial counsel due to counsel's failure to object to the jury instruction setting forth the elements of WIS. STAT. § 946.43(2m)(a), which Schmidt contends violated his right to a unanimous verdict. The circuit court denied the motion without a hearing, concluding that, pursuant to § 946.43(2m)(a), the jury need only have unanimously agreed that a correctional officer was the target of Schmidt's assault and did not have to unanimously agree as to which correctional officer was the specific target. Schmidt appeals the judgment of conviction and the order denying his motion for postconviction relief. Additional background will be included as needed, below.

## DISCUSSION

¶9 Schmidt argues that: (1) the evidence was insufficient to support his conviction; (2) the charging documents and jury instructions were duplicitous; and (3) counsel was ineffective for failing to object to the jury instructions, which Schmidt contends violated the requirement of jury unanimity. We address and reject each argument in turn.

### I. Sufficiency of the Evidence

¶10 Schmidt argues that the evidence was insufficient to support his conviction. Notably, on appeal, Schmidt no longer contends that he did not spit at anyone. Instead, he argues that the State was required to prove that he had the "intent to abuse" C.F., upon whom the saliva landed, and that the evidence was insufficient to establish such intent. We reject Schmidt's insufficiency of the evidence argument because, as noted in our 2018 order and as explained below, it is predicated on an incorrect reading of the assault-by-prisoner statute.

¶11   In evaluating a claim of insufficiency of the evidence, we view the evidence in the light most favorable to the State and the conviction. ***State v. Poellinger***, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).  We do not overturn a verdict unless the evidence is so lacking in probative value and force that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. ***Id.***  The defendant "bears a heavy burden in attempting to convince us to set aside the jury's verdict." ***State v. Searcy***, 2006 WI App 8, ¶22, 288 Wis. 2d 804, 709 N.W.2d 497 (2005).

¶12   As applicable to this case, in order to prove Schmidt guilty of assault by prisoner, the State was required to prove that Schmidt, while a prison inmate, expelled saliva at or toward a correctional officer without the officer's consent, with the intent that the saliva contact the officer, and with intent to abuse the officer. *See* WIS. STAT. § 946.43(2m)(a).[2]

---

[2]  WISCONSIN STAT. § 946.43(2m)(a) provides:

> Any prisoner confined to a state prison or other state, county or municipal detention facility who throws or expels blood, semen, vomit, saliva, urine, feces or other bodily substance at or toward an officer, employee or visitor of the prison or facility or another prisoner of the prison or facility under all of the following circumstances is guilty of a Class I felony:
>
> 1. The prisoner throws or expels the blood, semen, vomit, saliva, urine, feces or other bodily substance with the intent that it come into contact with the officer, employee, visitor or other prisoner.
>
> 2. The prisoner throws or expels the blood, semen, vomit, saliva, urine, feces or other bodily substance with the intent either to cause bodily harm to the officer, employee, visitor or other prisoner or to abuse, harass, offend, intimidate or frighten the officer, employee, visitor or other prisoner.

(continued)

¶13 Schmidt concedes that the State "proved that [he] intended to abuse S.P." However, he argues that because C.F.—rather than S.P.—was the officer upon whom the saliva landed, the State was required to prove intent to abuse with respect to C.F., which the State did not do. He further argues that, as a result, his conviction for assault by prisoner could only be sustained by applying the doctrine of transferred intent, a doctrine he states should not be applied here, and that, at most, he could only have been found guilty of an *attempted* violation of WIS. STAT. § 946.43(2m)(a). Schmidt's arguments are without merit.

¶14 As we stated in our 2018 order, "Under the elements of the charged statute, it is irrelevant which officer was struck, or whether any officer was struck at all. No element of this charge requires the jury to consider where the saliva landed." Thus, we further explained that, if Schmidt expelled saliva at S.P. with the intent that it contact her and with the intent to abuse her, the "verdict would be proper regardless of the fact that saliva actually struck a different officer. The crime was complete or, to use Schmidt's term, accomplished, when the saliva left Schmidt's mouth."

¶15 Schmidt does not dispute our interpretation of the assault-by-prisoner statute, despite the fact that these same legal conclusions are relied upon by the State in its response brief. Instead, Schmidt simply repeats the same

---

3. The officer, employee, visitor or other prisoner does not consent to the blood, semen, vomit, saliva, urine, feces or other bodily substance being thrown or expelled at or toward him or her.

Schmidt acknowledges that the circuit court's jury instructions for this provision complied with the pattern injury instruction, WIS JI—CRIMINAL 1779A.

arguments rejected in our 2018 order, summarizing the issue in his reply brief as follows: "The central question is, if a defendant spits at [officer] A, intending to hit A with spittle, but the spittle hits [officer] B[] instead, was there an assault on B under this statute?" As both the assault-by-prisoner statute and our prior order make clear, the answer to this question is yes—the crime of assault by prisoner may be committed under such facts. WISCONSIN STAT. § 946.43(2m)(a) does not require that the saliva contact anyone, much less that it contact the officer that it was intended for; it requires only that the prisoner intend that it contact the officer. *See* § 946.43(2m)(a)1. Thus, we reject Schmidt's argument that the jury would have to rely on the doctrine of transferred intent to find him guilty of the charged crime, and we likewise reject his argument that this was an attempted but not completed assault.

¶16 Accordingly, Schmidt has failed to show that the evidence was insufficient to support his conviction.

## II. Duplicity

¶17 Schmidt argues that the charging documents and the jury instructions are duplicitous. "Duplicity is the joining in a single count of two or more separate offenses." **State v. Lomagro**, 113 Wis. 2d 582, 586, 335 N.W.2d 583 (1983). In **Lomagro**, our supreme court articulated five purposes behind the prohibition against duplicity:

> (1) to assure that the defendant is sufficiently notified of the charge; (2) to protect the defendant against double jeopardy; (3) to avoid prejudice and confusion arising from evidentiary rulings during trial; (4) to assure that the defendant is appropriately sentenced for the crime charged; and (5) to guarantee jury unanimity.

*Id.* at 586-87.  It is undisputed that Schmidt failed to make any duplicity objection in the circuit court at any stage of the proceedings.  Thus, we may consider the duplicity arguments waived.  *See* WIS. STAT. § 971.31(2) ("[D]efenses and objections based on defects in the institution of the proceedings, insufficiency of the complaint, information or indictment … shall be raised before trial … or be deemed waived."); WIS. STAT. § 805.13(3) ("Failure to object at the [jury instruction] conference constitutes a waiver of any error in the proposed instructions or verdict.").[3]

¶18     Schmidt asks that we overlook his failure to timely assert a duplicity objection to either the charging documents or jury instructions in light of what he asserts is our discretion to review challenges to jury instructions which raise federal constitutional questions going to the integrity of the fact-finding process. *See State v. Zelenka*, 130 Wis. 2d 34, 44-45, 387 N.W.2d 55 (1986) (our supreme court "may choose to review challenges to jury instructions which raise federal constitutional questions going to the integrity of the fact-finding process").  He also contends that we are not required to find his duplicity argument waived because the rule of waiver is one of judicial administration and not of appellate

---

[3] This statute applies to criminal proceedings.  *See* WIS. STAT. § 972.11(1); *State v. Schumacher*, 144 Wis. 2d 388, 402 n.11, 424 N.W.2d 672 (1988).  We also note that these two statutes use the word "waiver" rather than "forfeiture."  In *State v. Ndina*, 2009 WI 21, ¶¶28-32, 315 Wis. 2d 653, 761 N.W.2d 612, our supreme court clarified the distinction between the terms "forfeiture" and "waiver."  The *Ndina* court stated, "Although cases sometimes use the words 'forfeiture' and 'waiver' interchangeably, the two words embody very different legal concepts. 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.'" *Id.*, ¶29 (quoted source omitted).  Because our supreme court has used the term waiver rather than forfeiture when discussing failure to object to a jury instruction, we do so here. *See State v. Trammell*, 2019 WI 59, ¶2, 387 Wis. 2d 156, 928 N.W.2d 564 ("We conclude that [the defendant] waived his right to object to the use of Wis JI—Criminal 140 by failing to object to its use at the jury instruction and verdict conference, pursuant to Wis. Stat. § 805.13(3).").

jurisdiction. *See State v. Cox*, 2007 WI App 38, ¶6, 300 Wis. 2d 236, 730 N.W.2d 452 ("[T]he rule of waiver is one of judicial administration and not of appellate jurisdiction.").

¶19    In arguing that we should disregard waiver as to the duplicity issue, Schmidt does not distinguish between his duplicity argument as raised against the charging documents and his argument as raised against the jury instructions. We address these arguments separately here.

¶20    Schmidt argues that the charging documents—namely, the complaint and information—are duplicitous, and that we may choose to address this issue despite his failure to object. *See Brown v. State*, 230 Wis. 2d 355, 370, 602 N.W.2d 79 (Ct. App. 1999) ("We do not generally consider issues on appeal that were not raised in the trial court, although we have the discretion to do so."). Because Schmidt's duplicity argument appears to be intertwined with his unanimity argument, we briefly address his duplicity argument with respect to the charges, despite his failure to object in the circuit court. *See Lomagro*, 113 Wis. 2d at 590 n.3 ("The defendant never raised the issue of duplicitous charging until he was before this court in this review. Such an objection is waived if not raised before the trial court. However, we have discussed this issue because of its interrelation to the issue of the defendant's right to a unanimous verdict." (citations omitted)).

¶21    A charging document is not duplicitous unless it states more than one offense. *Id.* at 586-87 ("Duplicity is the joining in a single count of *two or more separate offenses*.… The first step in determining whether a criminal complaint is duplicitous is to examine its factual allegations to determine whether it states *more than one offense*." (emphasis added)). If the complaint states more

than one offense in a single count, the court then examines the allegations "in light of the purposes of the prohibition against duplicity," and the complaint "may be found to be duplicitous only if any of these dangers are present and cannot be cured by instructions to the jury." *Id.* at 589. As explained below, Schmidt's duplicity argument fails at the first step because he does not show that either the criminal complaint or the information states more than one offense.

¶22 Schmidt concedes that the factual allegations in the charging documents do not state more than one act, stating, "Here, there is no question of a continuing series of acts—it was only alleged and proved that there was one gob of spit that ended up on an officer." He acknowledges that "it is fruitless to discuss whether there were multiple acts." In addition, as we stated in our 2018 order, both the criminal complaint and information name only one victim. The complaint refers to "Victim 1" and refers to that person as a male and as the individual who had been escorting Schmidt, was struck by the saliva, and went to a health care center for exposure to foreign bodily substances, all of which describe C.F. The information likewise refers to only one victim, identified only as "Victim 1." Thus, Schmidt has failed to show how the charges state more than one offense as required for a duplicity claim.

¶23 Instead of explaining how the legal standards for duplicity were satisfied here, Schmidt relies on assertions that appear to be unrelated to this inquiry, stating that the "State did not want to commit as to who[] the victim of the act was" and that "[c]harging in this matter let the State avoid the whole issue of whether the act against S.P. was actually an attempt rather than an accomplished assault." Schmidt fails to connect these assertions to any duplicity principles. His duplicity argument with respect to the charging documents is undeveloped and,

therefore, we do not consider it further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).

¶24 As stated, Schmidt also argues that the jury instructions are duplicitous. To the extent Schmidt's duplicity argument pertains to the jury instructions, we do not reach the issue. As the State notes, our supreme court has explained that this court "has no power to reach an unobjected-to jury instruction because the court of appeals lacks a discretionary power of review." *State v. Trammell*, 2019 WI 59, ¶25, 387 Wis. 2d 156, 928 N.W.2d 564; *see also State v. Schumacher*, 144 Wis. 2d 388, 409-10, 424 N.W.2d 672 (1988) (concluding that "the court of appeals had no power to reach the unobjected-to instructions" because "the court of appeals has no general power of review"); *State v. Becker*, 2009 WI App 59, ¶16, 318 Wis. 2d 97, 767 N.W.2d 585 ("'[T]he court of appeals is prohibited from reviewing instructions and verdict forms absent a timely objection by the defendant.'" (quoted source omitted)).

¶25 In his reply brief, Schmidt responds that *Trammell* is inapplicable because a different jury instruction was at issue in that case, and argues that the question presented here is of "sufficient public interest" to merit a decision.[4]

_____

[4] In support, Schmidt cites *State v. DeRango*, 229 Wis. 2d 1, 34, 599 N.W.2d 27 (Ct. App. 1999), *aff'd*, 2000 WI 89, 236 Wis. 2d 721, 613 N.W.2d 833, in which this court addressed the defendant's unanimity challenge to the criminal information and the jury instruction, even though the defendant had not objected at trial. *See id.* (despite no objection at trial, "we choose to address the [jury unanimity] issue on the merits because 'it is one of sufficient public interest to merit decision'") (quoted source omitted). Notably, however, the *DeRango* court did not address case law holding that this court may not review unobjected-to jury instructions, and the *DeRango* opinion does not suggest that this issue was before the court. Regardless, our supreme court recently reaffirmed that we are without power to reach arguments challenging unobjected-to jury instructions, *Trammell*, 387 Wis. 2d 156, ¶25, and Schmidt points to no authority from our supreme court making an exception to this rule based on "sufficient public interest." We are bound by decisions of our supreme court. *See County of Fond du Lac v. Derksen*, 2002 WI App 160, ¶8, 256 Wis. 2d 490, 647 N.W.2d 922.

However, he provides no authority for the proposition that a difference in the specific jury instruction at issue is a proper basis upon which to distinguish a statement by our supreme court regarding the extent of this court's powers with respect to jury instructions generally. Furthermore, we disagree that Schmidt's case presents a question of sufficient public interest to merit bypassing our issue-preservation rules, but even if we concluded otherwise, under *Trammell* and other established supreme court precedent, we may not reach the duplicity argument as it pertains to jury instructions. Accordingly, we do not address Schmidt's duplicity argument with respect to the unobjected-to jury instructions.[5]

¶26 In sum, we reject Schmidt's duplicity arguments with respect to both the charging documents and the jury instructions.

### III. Jury Unanimity

¶27 Schmidt argues that his trial counsel was ineffective by failing to object to the circuit court's jury instructions on the elements of assault by prisoner. Schmidt contends that the jury instructions violated his right to a unanimous verdict by not requiring the jury to agree as to which specific officer—C.F. or

---

[5] We note that Schmidt has not raised an ineffective assistance of counsel claim with respect to his duplicity argument; therefore, we do not address whether counsel was ineffective by not objecting to the jury instructions on the basis that they were duplicitous. *See Trammell*, 387 Wis. 2d 156, ¶19 n.8 ("We note that [the defendant] does not assert an ineffective assistance of counsel claim regarding his trial counsel's failure to timely object at the jury instruction and verdict conference. We therefore will not address whether [the defendant]'s trial counsel was ineffective .…"). Nor does Schmidt argue that the real controversy has not been tried. *See Vollmer v. Luety*, 156 Wis. 2d 1, 4, 456 N.W.2d 797 (1990) (court of appeals "properly applied *State v. Schumacher*, because the error which the plaintiff failed to preserve for appellate consideration by a proper objection, an allegedly deficient verdict question, appears from the record to have prevented the real controversy from being fully tried, and hence, under the provisions of sec. 752.35, Stats., it was within the court of appeals' statutory discretion to reverse the judgment and to remand for a new trial."). We likewise do not consider this issue.

12

S.P.—was his intended target.[6] Schmidt raised this argument in a postconviction motion following our 2018 order, and the circuit court denied Schmidt's motion without a hearing, concluding that the statute did not require jury unanimity as to the identity of the saliva's target.

¶28 We may uphold the dismissal of a postconviction motion without a hearing "if the record conclusively demonstrates that the defendant is not entitled to relief." *Nelson v. State*, 54 Wis. 2d 489, 497-98, 195 N.W.2d 629 (1972). Whether jury unanimity requires jurors to agree on a particular fact is a question of law that we review independently of the determinations rendered by the circuit court. *State v. Badzinski*, 2014 WI 6, ¶26, 352 Wis. 2d 329, 843 N.W.2d 29. For the reasons set forth below, we determine that the record conclusively demonstrates that Schmidt is not entitled to relief on his ineffective assistance of

---

[6] The court instructed the jury as follows:

> Assault by a prisoner is committed by one who is a prisoner confined to a State Prison and who throw or expels a bodily substance at or toward an officer of the prison or facility where the prisoner intends to abuse the other person and the other person does not consent to the substance being expelled. Before you may find Mr. Schmidt guilty of this offense the State must prove by evidence which satisfies you beyond a reasonable doubt that the following five elements were present. One, that Mr. Schmidt was a prisoner confined to a State Prison. This requires that Mr. Schmidt was confined in a prison as a result of a violation of the law. The Wisconsin Secure Program Facility is a State Prison. Two, that [S.P.] and [C.F.] were officers of the Wisconsin Secure Program facility. Three, that Mr. Schmidt threw or expelled a bodily substance at or toward a correctional officer with intent that the bodily substance come into contact with a correctional officer. Saliva is a bodily substance. Four, that Mr. Schmidt intended to abuse a correctional officer. Five, the correctional officer did not consent to the substance being expelled at or toward the correctional officer.

counsel claim, and we therefore affirm the circuit court's dismissal of the postconviction motion.

### A. Principles Governing Jury Unanimity

¶29    Wisconsin courts have long recognized that the right to trial by jury guaranteed by Sections 5 and 7 of Article I of the Wisconsin Constitution includes the right to a unanimous verdict. ***Holland v. State***, 91 Wis. 2d 134, 138, 280 N.W.2d 288 (1979). The unanimity requirement is linked with the due process requirement, under which the prosecution is required to "prove each essential element of the offense beyond a reasonable doubt." ***Id.*** Together, the unanimity requirement and the reasonable-doubt standard require "that the jury must agree unanimously that the prosecution has proved each essential element of the offense beyond a reasonable doubt before a valid verdict of guilty can be returned." ***Id.*** However, unanimity is not required "with respect to the alternative means or ways in which the crime can be committed." ***Id.*** at 143. The jury need not "agree on the manner in which the defendant participated in the crime if under any of the alternative ways the defendant would be guilty of the crime charged." ***Id.***

¶30    When determining whether a statute creates multiple offenses or a single offense with multiple modes of commission, we consider the following four factors: "1) the language of the statute, 2) the legislative history and context of the statute, 3) the nature of the proscribed conduct, and 4) the appropriateness of multiple punishment for the conduct." ***State v. Derango***, 2000 WI 89, ¶¶14-15, 236 Wis. 2d 721, 613 N.W.2d 833.

¶31    "'If more than one crime is presented to the jury, unanimity is required as to each.'" ***State v. Elverman***, 2015 WI App 91, ¶47, 366 Wis. 2d 169, 873 N.W.2d 528 (quoting ***Lomagro***, 113 Wis. 2d at 592). However, if the jury

was presented with only one crime with alternative modes of commission, this court applies the "due process"/"fundamental fairness" test used by the United States Supreme Court in *Schad v. Arizona*, 501 U.S. 624, 637-45 (1991), to determine whether unanimity is required with respect to the alternative means of committing the crime. *State v. Dearborn*, 2008 WI App 131, ¶19, 313 Wis. 2d 767, 758 N.W.2d 463.

¶32    Under this fundamental fairness test, the court looks to two factors to determine whether unanimity is required as to the means of satisfying an element. The first factor, where applicable, is the common-law history and "wide practice" of the law in question. *Id.* at ¶39. The second is the "moral and practical equivalence" of the alternate means of committing the crime. *Id.* The end goal is to determine whether treating the crime as one crime with alternative modes of commission complies with the due process concepts of "fundamental fairness" and "rationality." *Id.*

### B. Principles Governing Ineffective Assistance of Counsel Claims

¶33    "To prevail on an ineffective assistance claim, a defendant must establish both that counsel performed deficiently and that the deficient performance prejudiced the defense." *State v. Jacobsen*, 2014 WI App 13, ¶13, 352 Wis. 2d 409, 842 N.W.2d 365 (2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "To prove deficient performance, a defendant must point to specific acts or omissions by the lawyer that are 'outside the wide range of professionally competent assistance.'" *State v. Beauchamp*, 2010 WI App 42, ¶15, 324 Wis. 2d 162, 781 N.W.2d 254 (quoting *Strickland*, 466 U.S. at 690). Thus, we look to "whether the attorney's performance was reasonably effective considering all the circumstances." *State v. Balliette*, 2011 WI 79, ¶23, 336

15

Wis. 2d 358, 805 N.W.2d 334. When considering whether deficient performance prejudiced the defendant, we ask whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

¶34 There is a strong presumption that counsel provided adequate assistance. *State v. Domke*, 2011 WI 95, ¶36, 337 Wis. 2d 268, 805 N.W.2d 364. Counsel's performance will not be deemed deficient for the failure to make a meritless objection. *State v. Cummings*, 199 Wis. 2d 721, 747 n.10, 546 N.W.2d 406 (1996). Similarly, counsel will not be deemed deficient for failing to make an argument based on unsettled law. *State v. Breitzman*, 2017 WI 100, ¶49, 378 Wis. 2d 431, 904 N.W.2d 93; *State v. Jackson*, 2011 WI App 63, ¶10, 333 Wis. 2d 665, 799 N.W.2d 461 ("When the law is unsettled, the failure to raise an issue is objectively reasonable and therefore not deficient performance.").

### C. Schmidt Has Not Shown That His Trial Counsel's Performance Was Deficient

¶35 Significantly, Schmidt's argument with respect to jury unanimity is not that the circuit court's jury instruction was error in the first instance; rather, it is that his trial counsel was ineffective for failing to object to the purportedly erroneous jury instruction. This is an important distinction because, as stated, in order to prove deficient performance, Schmidt must show that his trial counsel's failure to object to the jury instruction was "'outside the wide range of professionally competent assistance.'" *Beauchamp*, 324 Wis. 2d 162, ¶15 (quoting *Strickland*, 466 U.S. at 690). Moreover, counsel will not be deemed deficient for failing to make an argument based on unsettled law, *Breitzman*, 378 Wis. 2d 431, ¶49, a circumstance which occurs "[w]hen case law can be reasonably analyzed in two different ways," *Jackson*, 333 Wis. 2d 665, ¶10, or

16

when "Wisconsin law was not clear at the time of [the alleged deficient performance]," *Morales-Pedrosa*, 2016 WI App 38, ¶26, 369 Wis. 2d 75, 879 N.W.2d 772.

¶36  We conclude that, at best, the law is unsettled with respect to the jury unanimity argument that Schmidt raises here.  As Schmidt himself acknowledges, "The question as to whether it violated the unanimity requirement to fail to have the jury specify whom they were finding as the victim may be a case of first impression in Wisconsin."  Moreover, Schmidt cites no Wisconsin authority that addresses whether the assault-by-prisoner statute requires that the jury be unanimous as to the intended target of the bodily substances expelled by prisoner; nor does he point to any Wisconsin authority that addresses a unanimity issue similar to that argued here.  Instead, Schmidt relies on two cases from other jurisdictions, which do not address a similar statute or circumstance and are not on point.[7]  The State likewise asserts that "as far as the State is aware, no such case exists," and this court's independent research has not revealed any case law directly on point.

---

[7] Schmidt relies on *Saenz v. State*, 451 S.W.3d 388 (Tex. Crim. App. 2014), and *United States v. Gonzalez*, 786 F.3d 714 (9th Cir. 2015).  However, in both *Saenz* and *Gonzalez*, the prosecution alleged that the defendant engaged in more than one specific act.  *Saenz*, 451 S.W.3d at 389 (prosecution alleged that nurse killed five different dialysis patients by injecting each of them with bleach); *Gonzalez*, 786 F.3d at 716 (prosecution alleged that multiple wiretapped telephone conversations took place on different dates, relating to various members of different rival gangs).  By contrast, in this case, the State alleged that Schmidt engaged in a single specific act:  one expulsion of spit during the December 22, 2014 escort.  Thus, while the presentation of multiple specific actions in both *Saenz* and *Gonzalez* raised the concern that a failure to agree on a victim could mean a failure to agree on the commission of a specific act, the sole allegation in this case—a single instance of spitting—poses no danger that the jury did not agree on the specific criminal act Schmidt committed.  Moreover, Schmidt's reliance on *Gonzalez* is also inapt because the court in that case only "assume[d], without deciding" that the facts of that case required that a specific unanimity instruction be given.  *Gonzalez*, 786 F.3d at 717.

17

¶37    To the extent that our research reveals any case law instructive to the unanimity issue here, such case law appears to undercut Schmidt's unanimity argument.  For example, in *State v. Hammer*, we considered whether, to support a conviction for burglary, the jury had to be unanimous as to the predicate felony that the defendant intended to commit when entering a dwelling.  *Hammer*, 216 Wis. 2d 214, 218-19, 576 N.W.2d 285 (Ct. App. 1997).  The circuit court had instructed the jury that three different acts (first-degree sexual assault, armed robbery, and battery causing substantial bodily harm) were felonies but declined to instruct the jury that the verdict had to be unanimous as to the predicate felony that the defendant intended to commit.  *Id.* at 217-18.  We affirmed the circuit court, concluding that the burglary statute did not require jury unanimity as to the intent to commit a particular felony.  *See id.* at 222.  We reasoned:

> It is clear from the statute that the legislature focused on the intent to commit a felony, not any particular felony. Therefore, all the felonies are conceptually similar for the purposes of unanimity because each and every felony provides the predicate intent element.  There is no difference in penalty irrespective of which underlying felony or combination of felonies was intended.  Rather, it is [the defendant's] single entry into the dwelling with the requisite intent that constitutes the crime.
>
> Under these circumstances, [the defendant] was not entitled to a unanimity instruction regarding the felonies that formed the basis of his intent to enter the dwelling. The jury merely needed to conclude that [the defendant] unlawfully entered the dwelling with an intent to commit a felony. The trial court did not erroneously instruct the jury.

*Id.*

¶38    Similarly, here, the language of WIS. STAT. 946.43(2m)(a) indicates that the legislature was concerned with preventing assaults against correctional officers and other classes of persons frequently present at correctional facilities.  It

does not indicate that the legislature was concerned with which particular person the inmate intended to hit with that inmate's bodily fluid. As was the case with the burglary statute in *Hammer*, the statutory language here undermines Schmidt's argument that the jury was required to be unanimous as to which "officer" was the intended target of Schmidt's assault.

¶39   That said, however, this case does not require us to definitively conclude whether WIS. STAT. § 946.43(2m)(a) requires jury unanimity as to the identity of the target of the assault. Rather, we need only address whether trial counsel's failure to object to the jury instructions on unanimity grounds was "'outside the wide range of professionally competent assistance'" so as to constitute deficient performance. *See Beauchamp*, 324 Wis. 2d 162, ¶15 (quoted source omitted). Because the law is, at best, unsettled, counsel's performance was not deficient and Schmidt's ineffective-assistance claim must fail.[8]

## CONCLUSION

¶40   For the reasons stated above, we reject Schmidt's arguments and affirm.

---

[8] Because we decide that trial counsel's failure to challenge the jury instruction on unanimity grounds did not constitute deficient performance, we need not consider the State's argument that Schmidt cannot show prejudice because his defense was that he did not spit at all. *See State v. Morales-Pedrosa*, 2016 WI App 38, ¶15, 369 Wis. 2d 75, 879 N.W.2d 772 (if the defendant fails to prove one prong of the ineffective assistance of counsel test, we need not address the other).

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.